UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARAY OPEL,

    Plaintiff,

v.

THE BOEING COMPANY, a Delaware corporation,

    Defendant.

CASE NO. C11-1890RSM

ORDER ON MOTION TO DISMISS

Plaintiff Laray Opel, appearing through counsel, filed this action for wrongful termination and violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60, in Snohomish County Superior Court. Defendant The Boeing Company ("Boeing") removed it to this Court on the basis of the parties' diversity of citizenship. Dkt. # 1. The Court has jurisdiction pursuant to 28 U.S.C § 1332.

The matter is now before the Court for consideration of defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim. Dkt. # 9. Defendant has properly filed this motion before filing an answer to the complaint. Fed.R.Civ.P. 12(b)(6). Plaintiff has opposed the motion. After careful consideration of the complaint and attachments thereto, the parties' memoranda, and controlling

ORDER - 1

authority, the Court has determined that the motion shall be granted in part and denied in part.

FACTUAL BACKGROUND

The complaint alleges that plaintiff began working at Boeing as a factory clerk in 1987. Complaint, ¶ 3.2. Prior to that, in 1981, she was diagnosed with a tumor condition which required surgery, and she developed an addiction to Vicodin as a result. *Id*., ¶ 3.1. The tumor condition required multiple surgeries over the years, for which Boeing paid under the employees' medical plan. Plaintiff underwent her sixth surgery for tumors in 2007, and it was paid for by Boeing. *Id.,* ¶ 3.7.

In 1997, plaintiff received a promotion, and also met a co-worker, Mr. Sanders, who pursued her aggressively. *Id*., ¶¶ 3.2 - 3.4. He knew of plaintiff's Vicodin addiction and supplied her with pills when they were together, off work. They occasionally engaged in sexual relations when Ms. Opal was under the influence of the Vicodin. *Id*., ¶ 3.4.

Plaintiff transferred to a different department in 1999 to avoid Mr. Sanders, but he continued to pursue her, writing emails approximately once a week. *Id.,* ¶ 3.5. Plaintiff did not report the harassment to her supervisors, fearing her reputation as a good employee would suffer. *Id*., ¶¶ 1.4, 3.8. In March, 2008, plaintiff showed one of Mr. Sanders' emails, in which he was "essentially begging for sex," to a friend and co-worker. *Id*., ¶ 3.8. Plaintiff responded "Sure" to one such offer to "party," but only as a joke to cause him to leave her alone for a time. *Id*. The complaint includes the language of one email exchange in which she responded to his inquiry about meeting by asking, "What do I get again?" Mr. Sanders responded, "The rest of my m&ms," by which he referred to the Vicodin pills. He also asked if they could have sexual relations, and plaintiff responded, "No," and "Sorry, Mike, only my lover touches me." *Id*., ¶ 3.9. Plaintiff attached a copy of this email string, dated September 25, 2009, to her complaint. *Id*., Exhibit A.

The complaint further alleges that on October 6, 2009, plaintiff was contacted regarding an internal investigation of Mr. Sanders and the email exchange. Plaintiff asked for union representation, but her request was declined by investigator Bill Ferguson, who assured her that she "was not an object of the investigation." *Id*., ¶ 3.10. Following the interview, plaintiff was given a prepared statement to sign, and she did so despite her view that it was "inaccurate in seemingly inconsequential respects." In

ORDER - 2

the statement, plaintiff asserted that "I have never purchased any drugs, prescription or illegal, from Sanders. When I have given in to Sanders sexually it is usually in exchange for Vicodon [sic] and maybe some Jack Daniels." Complaint, Exhibit B. The statement also states that "I have only accepted the pills from Sanders off property. I acknowledge that this referred to an offer of Vicodon [sic]. I believe Sanders obtained the pills from a prescription belonging to his mother." *Id*. Plaintiff's complaint alleges that the statement "incorrectly said Ms. Opel had "exchanged Vicodin for sex. Correctly stated, several years earlier Ms. Opel had accepted Vicodin from Mr. Sanders on non-Boeing property." Complaint, ¶ 3.11.

On October 22, 2009, three weeks after plaintiff's meeting with Mr. Ferguson, Boeing terminated both plaintiff and Mr. Sanders for misconduct, specifically for using Boeing property (the company email system) to arranged an exchange of drugs for sex. *Id*., ¶ 3.12. Plaintiff alleges that at the time of her termination, Boeing was fully aware of her medical history, her addiction to Vicodin, and the sexual harassment by Mr. Sanders. *Id*. She also alleges, on information and belief, that "Boeing has not terminated other mid and low-level employees who caused less complication and expense to the company, " and that she was replaced with employees "who did not fall under the same legally protected classification" as she. *Id*., ¶ 3.16.

On these facts, plaintiff has asserted four state-law claims of employment discrimination: (1) a claim that Boeing terminated her on account of her chronic tumor condition (and because of the expense of treatment), in violation of the WLAD; (2) a claim that Boeing terminated her on the basis of her addiction to Vicodin, in violation of the WLAD; (3) a claim of failure to accommodate her addiction disability, in violation of the WLAD; and (4) a claim of "sexual harassment/gender discrimination/retaliation/wrongful discharge in violation of public policy." Complaint, ¶¶ 4.2 - 4.5. Defendant has moved to dismiss all four for failure to state a claim.

DISCUSSION

**I. Legal Standard**

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule

ORDER - 3

12(b)(6) is to test the legal sufficiency of the complaint." *N. Star International v. Arizona Corp. Comm'n*, 720 F. 2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light. Under Rule 8, "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R. Civ.P. 8(a).

In ruling on a motion to dismiss under Rule 12, the Court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks School of Business v. Symington*, 51 F. 3d 1480, 1484 (9th Cir. 1995). Dismissal is proper only where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001).

      "A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*. at 555.  Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.,* 622 F. 3d 1035, 1041 (9th Cir. 2010), citing *Ashcroft v. Iqubal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  In reviewing a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Ins. Co*., 80 F. 3d 336, 337-38 (9th Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974).  However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Twombly*, 550 U.S. at 555.

      Defendant's motion almost exclusively challenges the sufficiency of plaintiffs' allegations. In this regard, the pleading standard of Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  The requisite showing is not just "a blanket

ORDER - 4

assertion[ ] of entitlement to relief." *Twombly*, 550 U.S. at 556 n. 3.  Factual allegations in the complaint must provide fair notice of the nature of the claim and grounds on which the claim rests. *Id.* As long as the complaint meets this standard, it need not include the facts necessary to carry the plaintiff's burden, or detailed factual allegations, *Al-Kidd v. Ashcroft*, 580 F. 3d 949, 977 (9th Cir. 2009), *reversed on other grounds,* — U.S. —, 131 S.Ct. 2074 (2011); *Twombly,* 550 U.S. at 555.

**II. Analysis**

Boeing summarizes the basis for its motion to dismiss as follows:

> The complaint tells a simple and sad story.  The plaintiff and her former co-worker were caught using Boeing's property to facilitate an exchange of sexual favors for drugs.  Boeing fired them both.  The post-termination concoction of "discrimination" and other claims by Ms. Opel fails to come close to stating a plausible claim for relief against Boeing.

Boeing's Motion to Dismiss, Dkt. # 9, p. 11.  This argument fails to recognize the important rule that the facts stated in the complaint must be taken as true, and construed in the light most favorablel to plaintiff.  Boeing contends that plaintiff admitted to the Boeing investigator that "Mr. Sanders offered Vicodin to Ms. Opel through her Boeing email account and Ms. Opel accepted the offer through her Boeing email account." *Id*., p. 3.  Defendant cites to the complaint at ¶ 3.11 and the investigator's report, attached to the complaint at Exhibit B, for this assertion.  However, plaintiff has alleged that (1) she was denied union representation at the meeting with the investigator and assured by him that she was not the object of the investigation; (2) the statement she signed was incorrect in that it represented that she "exchanged" drugs for sex; and (3) she only responded "sure" to an offer from Mr. Sanders to "party" as a joke and an effort to get him to leave her alone.  Complaint, ¶¶ 3.9 - 3.11.  These allegations must be taken as true, and Boeing may not refute them at this stage in the proceeding by asserting that plaintiff's motive for answering "sure" is irrelevant.  *See,* Boeing's Reply, Dkt. # 11, p. 2.

*A.  Disability Discrimination in Violation of the WLAD (Claims 1 and 2)*

Turning to the individual claims, defendant asserts that plaintiff has not stated a claim of disability discrimination because she has failed to satisfy the fourth element of a prima facie case, namely that she was treated differently from persons not in the protected class. Defendant asks the Court to overlook plaintiff's "bare assertion" that Boeing did not terminate other mid- and low-level

ORDER - 5

employees who did not have complicated medical conditions. Defendant's Reply, Dkt. # 11, p. 3. This the Court cannot do. Plaintiff has alleged both that she was treated differently from persons who did not have expensive medical conditions, and that she was replaced with a non-disabled employee. Assuming the veracity of these allegations as required, plaintiff has stated a plausible cause of action for disability discrimination for both her tumor condition and her Vicodin addition. Defendant's arguments amount to a factual dispute over the ultimate issue in this case, the reason for her termination. However, the question is not whether she will ultimately prevail, but whether she is entitled to offer evidence to support her claims. The Court finds that she has stated sufficient facts which, when taken as true, state a plausible claim for relief on her claims of disability discrimination. Defendant's motion to dismiss shall be denied as to these two claims.

*B. Failure to Accommodate a Disability in Violation of the WLAD (Claim 3)*

Plaintiff contends in this claim that Boeing failed to accommodate her addiction disability. In moving to dismiss this claim, Boeing asserts that she fails to allege facts to support three of the four elements of a prima facie case.

In order to establish a prima facie case of failure to accommodate a disability, a plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to adopt measures that were available and medically necessary to accommodate the disability. *Davis v. Microsoft Corp.*, 149 Wash. 2d 521, 532 (2003). Boeing contends that plaintiff has failed to allege facts which establish elements (1), (3), and (4).

With respect to the first element, plaintiff has failed to allege any substantial limitation on her ability to perform her job as a result of her Vicodin addiction. To the contrary, she has alleged that she was an excellent employee and selected for promotion. Complaint, ¶¶ 3.2, 3.6. In opposing the motion to dismiss this claim, she asserts that her Vicodin addiction had a substantially limiting effect on her job performance because she was "vulnerable to a predatory employee's advances." Plaintiff's Response,

ORDER - 6

Dkt. # 10, p. 8. Plaintiff contends that this was a negative impact on her conditions of employment, sufficient to meet the first element. This argument arises from the language of RCW 49.60.040(7), which plaintiff quotes as stating in relevant part,

> Only for the purpose of qualifying for reasonable accommodation in employment . . .
> (i) <u>the impairment must have a substantially limiting effect upon the individual's abilitiy to perform his or her job</u>, the individual's ability to apply or be considered for a job, <u>or the individual's</u> access to equal benefits, privileges, or terms or <u>conditions of employment</u>.

RCW 49.64.040(7)(d)(emphasis provided by plaintiff).

By this underlining, plaintiff suggests that this element is met by alleging an impact upon an individual's terms of employment. This is a strained reading of the statute, which clearly requires **an impairment** which has "a substantially limiting effect" upon the individual's ability to perform her job, or her ability to apply for a job, or her **access** to equal conditions of employment. *Id*. (emphasis added). Plaintiff's allegation that her Vicodin addiction left her vulnerable to Mr. Sanders' advances fails to meet the statutory definition of an impairment requiring reasonable accommodation.

Nor has plaintiff properly alleged the third element, that she gave notice to Boeing of her impairment and need for an accommodation. Indeed, with respect to her alleged impairment—her vulnerability to Mr. Sanders' advances---she alleged the opposite: she alleged that she did not report the harassment by Mr. Sanders because she was "concerned her reputation would suffer." Complaint, ¶ 1.4. Now, in response to the motion to dismiss, she points to her allegation that "at the time of her termination Boeing was fully aware of her medical history, vicodin [sic] addiction, and sexual harassment." Complaint, ¶ 3.12. Thus, she explains, she put Boeing on notice of her addiction when she signed her statement regarding Mr. Sanders' offers of Vicodin. Plaintiff's Response, Dkt. # 20, p. 9. She contends that "an employer has an ongoing duty to investigate and reasonably accommodate a disability post job separation." *Id.*, *citing Martini v. Boeing Company*, 88 Wash. App. 442, 257-58 (1997). The cited pages bear a discussion of unsettled law regarding the right of a disability-discrimination plaintiff to recover for damages in a situation of constructive discharge. This discussion is not relevant in any way to plaintiff's assertion that post-termination notice of a disability triggers a duty to accommodate. Plaintiff has wholly failed to demonstrate that she met the burden of giving the

ORDER - 7

employer notice of the disability and the need for an accommodation, and cannot satisfy the third element of the prima facie case. *Hume v. American Disposal Co.,* 124 Wash. 2d 656, 672 (1994); *cert. denied*, 513 U.S. 1112 (1995).

In the absence of notice, Boeing's obligation to take reasonable steps to accommodate a disability was never triggered, so plaintiff cannot satisfy the fourth element of a prima facie case. As she has failed to plead allegations sufficient to give rise to even a reasonable inference regarding the elements of a claim of failure to accommodate, defendant's motion to dismiss shall be granted as to this claim.

*C. Sexual Harassment/Gender Discrimination/Retaliation/Wrongful Termination (Claim 4)*

Plaintiff alleges in this claim that

> Boeing violated Washington's Law Against Discrimination (Chapter 49.60 RCW) and other Washington laws when the company terminated Ms. Opel for the complications and expense her sexual harassment created. An employer should not be able to avoid implications of post-harassment episodes by simply firing both the harasser and the harassed. This appears to be a matter of first impression.

Complaint, ¶ 4.5. Defendant argues that this claim should be dismissed because plaintiff cannot state a claim of sexual harassment. Where the alleged harassment is by a co-worker rather than a supervisor, no cause of action lies unless the harassed employee can demonstrate that "the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action." Motion to Dismiss, Dkt. # 9, p. 9; *quoting Glasgow v. Georgia-Pacific Corp*, 103 Wash. 2d 401, 407 (1985). As noted above, plaintiff has not alleged she reported the harassment by Mr. Sanders to her supervisors or gave Boeing an opportunity to correct the problem. She is therefore foreclosed from asserting a claim of sexual harassment against Boeing.

In arguing against dismissal of this claim under Rule 12(b)(6), plaintiff states,

> This is a matter of first impression that draws upon elements of several legal theories. The core of this matter of first impression is a straightforward policy: an employer should not be allowed to avoid implications of post-harasment episodes by simply firing both the sexual harasser and the sexually harassed party.
>
> This matter of first impression best fits within Washington's Law of Discrimination under the rubric of a RCW 49.60 retaliation claim, but it does not fit there squarely. For an

ORDER - 8

RCW 49.60 retaliation claim Ms. Opel would need to satisfy the following prima facie elements:

> (1) [S]he engaged in statutorily protected activity, (2) Boeing took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action.

*Washington v. Boeing*, 105 Wash. App. 1, 14, 19 P. 3d 1041, 1049 (2000).

> As Boeing points out, this matter of first impression might not satisfy the first element, however, because the plaintiff/harassed party did not initially report the harassment to the employer. As Boeing argues, the first element of an RCW 49.60 retaliation claim requires that the plaintiff/employee be the one who came forward. Here the employer initiated the investigation and sought corroboration from the victim, rather than the victim being the one to initially come forward. Either the first element of retaliation should be expanded to encompass this situation. Or a new cause of action could be recognized, one or the other.

Plaintiff's Opposition, Dkt. # 10, pp. 11-12 (citations to record omitted).

Plaintiff thus urges this Court to create a new "hybrid" cause of action under the Washington Law Against Discrimination. The Court declines to do so. Each of the three statutory causes of action which plaintiff seeks to combine into one—sexual harassment, gender discrimination, and retaliation—has a meaningful and adequate remedy at law in the State of Washington. RCW 49.60. The Court finds that the Washington Supreme Court is unlikely to recognize this "hybrid" claim, as it has traditionally deferred to the state legislature in the creation of new causes of action. *See*, *Duncan v. Northwest Airlines, Inc.,* 203 F.R.D. 601, 605-05 (W.D.Wash. 2001) *(quoting Burkhart v. Harrod,* 110 Wash. 2d 381, 385-86 (1988)*.* Washington courts have declined to recognize proposed new causes of action when "an employee's rights are already protected by" another remedy. *Id*., *quoting White v. State*, 131 Wash. 2d 1, 20 (1997). Thus, the Washington Supreme Court has made an exception to the rule when the plaintiff would have no other remedy at law. *Id*., *citing Roberts v. Dudley*, 140 Wash. 2d 58, 63 (2000) (wrongful discharge in violation of public policy).

Here, plaintiff had adequate remedies under the WLAD for claims of sexual harassment and retaliatory discharge. The fact that she failed to take steps which would trigger the protective provisions of the statute, namely giving notice of the harassment, does not justify the creation of a new "hybrid" cause of action which the legislature itself declined to recognize. Plaintiff's claims of sexual

ORDER - 9

1  harassment, gender discrimination, retaliation, and wrongful termination must therefore be considered
2  individually and under existing law.

3  Treated individually, all four claims fail. Plaintiff herself recognized in her opposition to
4  dismissal that the facts alleged cannot satisfy the first element of a retaliation claim. Plaintiff's
5  Opposition, Dkt. # 10, p. 12. Nor can she demonstrate a sexual harassment claim, because she failed to
6  give notice to her employer of her co-worker's activities. She has nowhere argued her claim of gender
7  discrimination; nor can she, in light of the fact that she and Mr. Sanders were treated the same. Finally,
8  in order to state a claim of wrongful termination in violation of public policy, plaintiff must allege (1)
9  the existence of a clear public policy (the clarity element); (2) that discouraging the conduct in which
10 she engaged would jeopardize that public policy (the jeopardy element); (3) that the public policy-linked
11 conduct caused the dismissal (the causation element); and (4) that the employer has not offered an
12 overriding justification for the dismissal (the absence of justification element). *Cudney v. ALSCO*, 172
13 Wash. 2d 524, 529 (2011). Plaintiff has neither alleged a clear public policy nor shown how it was
14 jeopardized, nor has she advanced one in arguing against dismissal of this claim. She has therefore
15 failed to state a claim for wrongful termination in violation of public policy.

## CONCLUSION

17 Defendant's motion to dismiss for failure to state a claim is GRANTED as to her claim of failure
18 to accommodate (Claim 3) and this claim is DISMISSED. The motion is also GRANTED as to her
19 claim of "sexual harassment/gender discrimination/retaliation/wrongful termination" (Claim 4) and this
20 claim is DISMISSED. Defendant's motion to dismiss is DENIED as to plaintiff's two claims of
21 disability discrimination under the WLAD (Claims 1 and 2).

23 Dated this 26th day of April 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

28 ORDER - 10